## No. 5085.

### WILLIAM L. CUSHING et als. *v.* S. L. HARMONSON et als.

Where the plaintiff, individually and as administrator of a succession, sues to annul the sale of the succession property and other proceedings held in connection with the settlement of that succession, on the grounds that his attorney exceeded his authority therein; that the sale was null, no price being paid; and that all said mortuary proceedings were had without his knowledge or authorization, and were in fraud of his rights; and where said plaintiff instituted this suit more than six years after the sale which he seeks to annul;

Held—That under the circumstances presented in the record, this court can not think there should be much hesitancy on rejecting plaintiff's demand.

Whatever may be the ordinary relations between the administrator of a succession and his attorney conducting the neccessary judicial proceedings in the settlement of a succession according to the laws of this State, an administrator, residing in a parish distant from that where the succession is opened, who showed so little interest in, and attention to, his fiduciary trust, who allowed such a length of time to elapse before taking a single step of a personal nature, and who committed the whole succession to the sole management of his attorney, should not be heard with much favor when he asks a court of justice to undo what it has done at the request of his attorney.

It was the duty of the administrator, as an officer of the court, to know what proceedings were being had in the succession administered by him and to present himself, or have another attorney to represent him, in the place of the one who had died. To grant his demand would be a premium upon negligence in fiduciary agents and officers of courts.

The prescription of one year to this action of nullity is properly invoked. The argument of the administrator that prescription only began to run when he discovered the alleged fraud practiced upon him, can not be of any avail, as he was bound in law to know his duty as administrator, and what proceedings were had in the settlement of the succession under his care.

APPEAL from the Parish Court, parish of West Feliciana. *Haralson*, J. *Samuel J. Powell*, for plaintiffs and appellants. *H. H. Leake*, for defendants and appellees.

HOWELL, J. The plaintiff, individually and as administrator of the succession of G. W. Miles, deceased, sues the widow and minor heirs of the deceased and the creditors of the succession, to annul the sale of the succession property, the final account filed in his name, the judgments homologating the same, the judgments upon oppositions filed, the judgments making him personally liable for the debt due the widow and heirs, and all the mortuary proceedings on and subsequent to the date of said sale, on the grounds that his attorney exceeded his authority therein, that the sale was null, no price being paid, and that all said mortuary proceedings were had without his knowledge or authorization, and are in fraud of his rights. He makes oath to the allegations of his petition.

The defense is, besides the general issue, that the petition contains no legal grounds for annulling the said judgments; that the price should have been tendered; that if any irregularities existed, they are prescribed by five years; that plaintiff was not a creditor of the deceased, and opened the succession to collect the claim of a creditor, whose agent he was, and that he was aware of and ratified said pro-

ceedings, and they pleaded the prescription of one year in bar of his action.

From a judgment against him, the plaintiff has appealed.

The facts necessary to be understood, are the following: In January 1867, the plaintiff, a resident of New Orleans, applied, through W. D. Winter, his attorney in the parish of West Feliciana, for letters of administration on the succession of G. W. Miles, deceased, in said parish, alleging himself to be a creditor. Upon taking the oath and giving security in New Orleans, by virtue of order to that effect, letters were issued to him, and in June following, upon a petition signed Winter & Butler, attorneys, an order issued to the sheriff to sell for cash all the property inventoried, consisting of an undivided half of a tract of land and the saw mill and machinery thereon in said parish. On the sixteenth July following the sale was made, the process verbal showing that the land was adjudicated to one L. L. Babers for three hundred and three dollars and twelve and a half cents, the appraisement; and the saw mill and fixtures were adjudicated to Gaty, McCune & Co. for $1650, the appraisement thereof, and that the purchasers complied with their bids by paying the cash, the sheriff taking a receipt for the amount of the sale, signed by "Winter & Butler, attorneys for administrator."

It is shown, however, that the cash was not paid, but the amount of each bid, less the proportion of each bidder of all the costs of settling the succession, was credited by W. D. Winter, attorney, on the claim of each of said bidders against said succession. These were the only creditors left by the deceased, and their claims were only partially extinguished by this process: One Babers, who resides in Mississippi, held a mortgage on the land, and the others, Gaty, McCune & Co., residing in St. Louis, Mo., were the vendors of the mill and machinery, and the plaintiff was their agent, and took the administration, as he says in his depositions, to collect the said claims. Prior to the sale, but after the date of the order therefor, the plaintiff wrote to his attorney, Winter, acknowledging the receipt of a letter from the latter, inquiring about the situation and value of the land to be sold, stating that his wife wished to make an investment for their little boy, and that she would authorize him to purchase the land if he thought advisable, and in a letter dated July 1, 1867, he informed his attorney that he had sent an engineer up to examine the machinery. On the day of the sale, July 16, 1867, Winter wrote a letter to plaintiff informing him that he had bought the saw mill for Gaty, McCune & Co. at the appraisement, and the land for Babers at the appraisement, describing the advantages of the land, asking him if he wished it at said bid, and in whose name he wished the title made, and directing

him where to deposit the price, in case he concluded to take it, and telegraph his conclusion. On twentieth same month Winter wrote again to plaintiff, saying: "There was no other bidder but myself on either. I was compelled to bid the appraisement for Messers. Gaty, McCune & Co., $1650, on saw mill. As I explained to you in the city, it mattered not whether my bid for them was $1200 or $3000, their liability in either event being the same, viz., for costs in the succession. I inclose a statement showing whole amount of costs, their proportion of same, also my account showing balance due me of three hundred and seventy-four dollars, which I would be glad to receive without delay. I send duplicate of this with inclosures to Given Campbell, Esq., by this mail."

Plaintiff says in October, 1873, in answer to an order to produce, that he can not find the above letters, and if he ever received any such letters, they were probably forwarded to Gaty, McCune & Co., of St. Louis. The letters and answers to interrogatories of Given Campbell, Samuel Gaty and Gaty, McCune & Co., show that they were informed of Winter's acts in regard to said sale; that the latter paid their proportion of all the costs of the succession, and authorized Winter to sell the machinery for their account.

The plaintiff, as a witness, says that some years ago, the exact time he can not recollect, Gaty, McCune & Co. wrote to him that they had bought the machinery and wished him to dispose of it, and he sent a person to examine it, but did not sell it. He says also that winter may possibly have explained to him after the adjudication, that the said parties had bought without paying the cash.

In February, 1868, a final account was filed, signed "W. L. Cushing, administrator, by his attorney, W. D. Winter," showing the expenses of the administration and the amounts allowed Babers and Gaty, McCune &. Co., amounting in all to the sum of the two bids of these parties, for all of which receipts are in the record. To this account Mrs. Harmonson, as widow and the tutrix of the minor children of the deceased, filed an opposition in the district court, objecting to the items in favor of Babers and Gaty, McCune & Co., and claiming the same for herself and the minors. Winter, as counsel for these two creditors and the administrator, filed separate answers for them in January 1869, to the opposition of Mrs. Harmonson. The account was two days thereafter homologated so far as not opposed. In January 1871, Winter was killed. In March following, the opposition of Mrs. Harmonson was sustained, and the account, as amended, homologated by judgment of the district court. The proceedings were transferred to the parish court, and there again the said opposition was sustained, and the account homologated in May 1871. No attorney, it seems,

appeared for the administrator in said proceedings, the firm of Winter & Butler having been dissolved a year before the death of the former, and the latter stating to the counsel of the opponents that he was not authorized to represent the administrator.

In April 1873, Mrs. Harmonson ruled the administrator to show cause why execution should not issue against him personally. In May, after answer filed, the rule was made absolute and the administrator appealed; but the appeal was set aside for insufficiency of the bond, and in September following (1873), more than six years after the sale which he seeks to annul, this suit was instituted by him.

Had the creditors or heirs made the demand, we would have difficulty in determining the questions that might properly arise in such a controversy; but when it is made by an administrator, under the circumstances presented in this record, we can not think there should be much hesitancy in rejecting it. Whatever may be the ordinary relations between the administrator of a succession and his attorney, conducting the necessary judicial proceedings in the settlement of a succession according to the laws of this State, we do not think that an administrator, residing in a parish distant from that where the succession is opened, who shows so little interest in and attention to his fiduciary trust, and allows such a length of time to elapse before he takes a single step of a personal character, but committed the whole succession to the sole management of his attorney, as plaintiff not only admits by his pleadings, but even urges in his argument, should be heard with much favor, when he asks a court of justice to undo what it has done at the request of his attorney, or what the acts of his said attorney give other parties the right to do.

The plaintiff, as all administrators do, took an oath to faithfully discharge and perform all the duties incumbent on him by law as administrator, and yet after more than six years, he not only virtually admits that he has not performed his duty, but alleges that all that has been done by his attorney was unauthorized by him, unknown to him, and in fraud of his rights, and asks that it all be declared null, and this solely for his own personal interest and advantage, and not for the benefit of his heirs or creditors. The evidence, however, brings conviction to our minds that he was not ignorant of the sale to be made, and as it was made, or of the death of his attorney, and it was his duty to attend, at once, to having another to represent him in the proceeding at the time in the court. The parties, who had made up an issue with him, had a right to have that issue determined. The judge might well have delayed the trial and required the administrator to be represented by counsel; but his not doing so, is not, in this instance, a legal cause for the said administrator to annul the judg-

ment on that issue. He had a year from the dates of the judgments sustaining the opposition to and homologating the account, to appeal and have them reversed, if erroneous, and he can not now be heard to plead ignorance or absence, or want of counsel as a cause of nullity.

It was his duty, as an officer of the court, to know what proceedings were being had in the succession administered by him, and to be present himself or have an attorney to represent him. To grant his demand, would be a premium upon negligence in fiduciary agents and officers of courts.

We think, too, the prescription of one year to his action of nullity is properly invoked. His argument that prescription only began to run when he discovered the fraud, as he alleges, on being served with the rule to make him personally responsible, can not avail him, as he was bound, in law, to know his duty as administrator, and what proceedings were had in the settlement of the succession under his care.

Judgment affirmed.